May it please the Court, the standard of review in this case is de novo, but the agency's decision may be set aside only if it is arbitrary, capricious, and abuse of discretion, or otherwise not in accordance with the law. The Court defers to neither party in resolving purely legal questions. In this case, Mr. Skokos was approved by the agency for a non-immigrant O visa as an alien of extraordinary ability, but denied lawful permanent residence as an alien of extraordinary ability. Same applicant, same facts asserted, same burden of proof, and the three regulatory criteria which figure so prominently in the briefs in this case. Did you raise that before the agency? I did not raise it before the agency. Why should we consider it then? Because of futility, Your Honor. The agency's position, which is in agency counsel's brief, is that an EB-1 application and an O-1 application are always completely separate cases with nothing to do with one another. But the information about the grant was available at the time you were before the agency, right? Yes, he had been before the EB-1. And that inconsistency was not brought to the agency's attention? It was brought to the district court judge's attention. It was not brought to the agency's attention, correct? That is correct, Your Honor. So the agency was unaware? Well, the agency, it was not brought to the agency's attention, but the agency would have simply ruled that, as they always do, that the cases... How do we know that? Because they've done it over and over and over in the past, and they stated their position again in the briefs before this court, that an EB-1 application and an O-1 application are completely separate, and they don't owe an explanation for why they make different decisions on those different cases. The regulatory criteria are identical, and in many cases such as this one, the facts, the petitioner, everything is basically the same. You didn't even bring it to the district court's attention until your reply brief, right? That's right, Your Honor. Why? May I ask why? Sure, of course, Your Honor. The reason I brought it up in our reply to opposition to counter-motion for summary judgment is that the government was hammering away on the deference owed to their position and arguing repeatedly that we couldn't show that there was any arbitrary or capricious decision-making here, and so I brought it to the district court's attention that, as a matter of fact, in this case, that there is arbitrary decision-making. It's the very definition of an arbitrary decision, where they have two identical sets of facts, two identical legal criteria, they make different decisions, and not only do not explain why, but they take the position that they don't owe anyone an explanation. I guess you'd still have a third point to make, even if you got past that, wouldn't you? In other words, you're three qualifications, all of which you have to meet for a... That's true, Your Honor. I believe the record shows that Mr. Skokos did make original contributions of major significance in his field, and that the court is... What? What were they? If I may digress a little bit before addressing... You can, but it doesn't seem like a hard question, and I didn't find in your brief what the original contributions were, so I'm still wondering. Because I think that the way that... I think the court is going to have to step in and do something about the way that the district director interpreted... And he interpreted the literal language of the regulation, and normally that is the correct way to do it, but in this case, it defeats the purpose of the underlying statute. This is your argument that the regulation does not fit this particular occupation or profession, right? And it also wouldn't fit... Can I have a yes or no? Yes, Your Honor. That is the argument? Okay, I have the same question. Did you raise that before the agency? The... No, because that would be futile, too. They have to interpret the regulation... You keep telling us that these arguments you have, which on the surface seem to make some sense, you didn't bring up before the agency because you would have lost. Because the agency has no choice but to enforce the plain language of the regulation. What I'm recognizing is that with this particular regulatory criteria, the original contribution of major significance, if it's applied literally, it defeats the purpose of the underlying statute because it requires, especially in a field like security or even a better example would be athletics, because it requires the applicant to not only be an alien of extraordinary ability, but essentially be an alien of a prodigy. Well, let's say... Let's accept this. And they say, as an example, it's not enough to play in the major leagues. You've got to be a very good major league player. But how do we know? We don't have any comparison here. This man runs a security operation. He's got four or five people under him. I don't see any comparisons with other comparable security operations and an indication that his is truly superior and exceptional. But there is evidence in the record, Your Honor, at excerpts of record pages 159 to 161, 163, excuse me, and 179, there are testimonials from people in the field who would know. There's the letter from Arthur Belevin, head of security for the World Music Awards, letter from Michael Robertson, executive transportation director for CDA. And these letters all say... What's CDA? Basically, we find out from these letters that his own client likes his services a lot. Is there anything at all that suggests or compares him to others in the field? Not specifically, but... And how can we say he is outstanding in his field? All we know is that his client likes him a lot. Well, then I would move on to the letter from the director of security for Suncoast Hotel and between that individual or his employer and Ms. Dionne? I don't think there's a formal relationship. Informal relationship? Well, I'm sure that they... And if that's the case, what does this tell us any more than what I just said, which is that his client likes him a lot and wants him to stay here and wants him to be able to get an immigrant visa. But I don't see any comparison with anybody else in the field. I think it's in the nature of security that this is not going to be someone... Some famous person. He's going to have to go to... It's a fairly close community of professionals who know who each other are and have some contact with each other. And if he's going to be required to put together supporting documentation, he's going to have to go to the people that he knows. It's the kind of work where if he does his job correctly, nobody should really know who he is. It's not like a famous athlete or a famous entertainer. You can think through their history that the only time anyone ever talks about security is when it fails. I'm reading into your rebuttal time, so you want to say what you have left? I'll reserve the balance of my time here. Thank you. Hear from the government? Good morning. May it please the court. Cherise Pratt for the government. I also try to keep your volume up, please. The room's a little larger than usual, so we want to make sure we hear you. Yes, sir. The issue today is whether Mr. Skokos is entitled to classification as an alien of extraordinary ability because of his work as a security consultant. Mr. Skokos' self-petition rests heavily on his association with Celine Dion. A long-term association with Celine Dion, who happens to be a famous singer, cannot confer extraordinary ability by association. Your opponent's argument, the last argument we heard, has some sense to it, doesn't it? If you're really good at providing security for individuals of substantial fame, and I think we would all agree Ms. Dion meets that category, no one knows what you're doing. If you come up with methods of providing security for famous, perhaps even endangered people, no one knows about it. Let's just assume for argument that this individual is absolutely the best celebrity security consultant that's ever walked the earth and has come up with wonderful methods for making sure that someone like Ms. Dion is safe and secure and can practice her profession. How does that fit with this regulation? How would one establish to the agency that they meet that criteria? Mr. Skokos could have submitted articles on his abilities. He could have... Articles published in security consultant magazines on him, that profile him. He could have published scholarly articles. He could have compared himself and offered recommendations from the security consultants for people such as Bruce Springsteen, Madonna, Rolling Stones. I guess the follow-up is, does the agency have a procedure under this regulation where an individual applying for this type of visa could provide information under SEAL? I'm sure he could have asked to provide information under SEAL. In a way so the public can't see it or people that might wish folks like Ms. Dion harm wouldn't understand the methods and procedures that a security consultant uses to keep his client or her client safe. Mr. Skokos submitted a lot of evidence in the record. My question is really simple. Are there procedures related to this specific regulation which permit the agency to receive information under SEAL? Yes or no? I would have to say yes. It's okay to say I don't know if you don't know. I'm not sure, but I would imagine that submitted under SEAL. Are you looking for information about his methods of security or are you looking for his reputation in the field of providing security? Yes. There are 10 different categories. He selected three categories. He could have selected different ones. He could have selected a category about published material about himself. He could have selected a category about authorship of scholarly articles. He did not. Those aren't an issue. He didn't. We only have three categories to argue about, I guess. The one was that his salary is an indication maybe or maybe not that he's paid well above the standard or something like that. Right. In relation to others in the field, but again, he did not submit the salaries of others in the field. He compared himself to security guards. And the difference between he spent some of his time as a security guard, I suppose, or as a bodyguard. His petition, the category in his petition, which I believe is at AR 5523, he said security consultant. That's the category that he defined himself as applying for extraordinary ability. So he's paid $91,000 a year and he should be comparing himself with security consultants for Bruce Springsteen, Madonna, perhaps the Secret Service, others. I mean, in his petition, he did include photos and he named dropped various celebrities, but he didn't include anything that would compare what he does with what the security consultants for those celebrities do. Mr. Skokos must demonstrate his extraordinary ability based on his own accomplishments. If not, each alien member of a celebrity's entourage could claim that they are aliens of extraordinary ability simply because of their celebrity association. A personal trainer could claim extraordinary ability in athletics. A personal chef could claim extraordinary ability in the sciences. The statute cannot be used to immigrate the whole entourage. There is something uniquely difficult. I've wondered if the expertise is security, and by definition, security, you want not to be visible, not to be public. I mean, a personal trainer could have his own athletic success. A chef could win awards. There are lots of competitions. I've never heard of an award being given out for good security. So this may fall into the catch-all category, but could it be said that somebody who is in the population at large, certainly more at risk or more in need of security services than the average citizen, if having that responsibility and successfully performing it for somebody at that level of celebrity, does that by itself demonstrate someone who qualifies at least in the field of security? That appears to be the presentation being made by the petitioner. No, there has to be some basis of comparison. He has to submit some documentary evidence. There are... To prove what? To prove that he has sustained a claim in these categories, and that he's at the very top of his field compared to others who do the same work. Opposing counsel mentioned that Mr. Skokuls was granted an O-1 temporary non-immigrant visa. I believe the approval notice was part of the administrative record at page 52. However, they did waive their arguments as to that since the O-1 was approved that the EB-1 should be approved. But the standards are different for the two. One is an immigrant visa. The other is a temporary non-immigrant visa. The standards for the O-1 visa, they simply say they must be employed in a critical or essential capacity for an organization with distinguished reputation, and they must command a high salary. The standards are slightly different and higher for the immigrant visa. The agency didn't know about the prior grant? In the administrative record, page 52, there is an O-1 approval. So they did or didn't know? It does say that the O-1 was approved, but... My question is, at the time, the application we're concerned about here today was being considered by the agency and with the district director in Nebraska, is that right? Yes, yes. Was the agency aware that another office had earlier approved a similar visa? I believe the agency was aware because it's part of the administrative record, but that is a different evidence. The whole evidence that was contained for the O-1 petition was not included in the administrative record. Are you telling us that the agency, in fact, knew about the earlier grant at the time of the hearing on this application? In reviewing the administrative record, I see that there is an O-1 approval. So I believe the agency did know that it was approved, but they're two different petitions with different standards, and because a non-immigrant petition was approved does not mean the agency is bound to approve an immigrant petition. Is what you're saying right now discussed at all in the record of this application? What do you mean? You just said they're different standards. They're not inherently contradictory. The fact that the agency granted this one type of visa earlier doesn't impact and shouldn't control the grant of the kind of visa we're talking about here today. Oh, Mr. Skokos did not raise that issue. I understand he didn't raise it. You've told us that the agency knew. Is that right? I believe the agency knew. Okay, so if the agency knew, why is there no discussion in the record about the differences between the and why shouldn't we send it back for the agency to articulate those differences? Because you would get the same results. If you look at the three categories of evidence he submitted and you look at the regulatory requirements, he simply does not meet them. He has not made any original contributions of major significance. He has not demonstrated that his salary is high in relation to others in his field. I understand all of that, but as we sit right now, there's no discussion inside the agency record that tells us the difference between the two visa applications, correct? Correct. We understand that's in part due to the fact that counsel didn't raise it, but now you tell us the agency knew. They knew all along. Whether they knew or not, it's irrelevant because it's two different petitions with two different evidence. We don't know what all was submitted for the O-1. We know it was approved, but we don't know what evidence supported that petition. We don't know whether that was wrong that it was approved. We can only look at what we have here today and know he applied in three different categories and the evidence he submitted does not support those three categories. Remanding it would have the same result. The agency is not bound by a possibly erroneous approval of an O-1 temporary non-immigrant visa petition. Thank you. Your Honors, moving quickly, the issue of his salary in comparison to security guard, the agency has said that's no good, but they've never suggested an alternative. Fundamentally, the job of a security guard and what Mr. Skokos does fundamentally is similar. Their jobs are both to protect the safety of their client. Only you're not trying to characterize him as a security guard. As to the other characteristics, you're trying to exalt his position, and for this one, it's like he's being compared to the man on the street. I'm saying it's the same field. He's at the top. Your typical security guard would be not so much, but it's the same field, like a single-legged ball player and a major leaguer. They're both professional baseball players, but one is significantly higher on the chain than the other. Looks like I'm done. Looks like you're out of time. Thank you, Your Honors, very much. Thank both counsel for the argument. The case just argued is submitted.
judges: Canby, Hawkins, Clifton